

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable L. L. Roberts
County Auditor
Hutchinson County
Stinnett, Texas

Dear Sir:

Opinion Number O-1848

Re: Would it be legal for Hutchin-
son County to pay the principal
and interest on $15,000.00 un-
paid warrants issued for the pur-
pose of constructing jetties in
the Canadina River out of funds
provided for in Article 6674q,
Section (h), Paragraph 4, Acts
1939, Forty-sixth Legislature,
commonly referred to as House
Bill 688?

We have your letter of January 11th in which you re-
quest our opinion on the above captioned question. The facts
underlying same are:

"November 8, 1937 Hutchinson County issued
$25,000.00 in warrants against the Road and Bridge
Fund for the purpose of constructing jetties in
the Canadian River to protect a bridge across the
Canadian River that cost the county $120,000.00;
the bridge being (built) on a county lateral road.

"$15,000.00 of these warrants are still unpaid."

Your question is as follows:

"Would it be legal for the county to pay the
principal and interest on these $15,000.00 war-
rants still outstanding out of the funds pro-
vided for in Article 6674q, Section (h), Para-
graph 4, (c), Acts 1939, 46th Legislature, page
582, (commonly referred to as H. B. 688)?"
(Parenthetical insertion ours).

The pertinent provisions of the Law above cited read as follows:

"The moneys allocated to each county from the Lateral Road Account shall be used by such county, first, for paying the principal, interest, and sinking fund requirements maturing during the fiscal year for which such money was allocated to such county, of bonds, warrants and other legal obligations issued prior to January 2, 1939, the proceeds of which were actually expended in acquiring rights of way for State designated highways, it being the intention of the Legislature to designate and set apart sufficient money to pay off and discharge said outstanding obligations incurred for right-of-way acquisition. Funds remaining in the Lateral Road Fund of any county after the payment of said right-of-way obligations may be used by the county under the direction of its Commissioners' Court for any one or all of the following purposes:

"(a) for the acquisition of rights-of-way for county lateral roads, and for the payment of legal obligations incurred therefor prior to January 2, 1939;

"(b) for the construction or improvement of county lateral roads;

"(c) for paying the principal, interest, and sinking fund requirements of any bonds or warrants which were legally issued by such county or road district prior to January 2, 1939, the proceeds of which were actually expended in the construction or improvement of lateral county roads * * *"

The courts have consistently held that a bridge spanning a stream bed and connecting a county or public road is a necessary part of a road, and that the Commissioners' Court would have the implied authority to construct bridges

under the general constitutional provision providing for the construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof.

Article 2351 imposes upon the county the duty of building bridges and keeping them in repair. House Bill 688, passed by the Forty-sixth Legislature, Regular Session, 1939, in Section 2, undertakes to define certain terms used throughout the Act, and therein we find this definition:

"By the expression 'roads' or 'road' as used in this Act, is meant roads, road beds, bridges and culverts."

We, therefore, think that insofar as the cou nty has issued obligations for the purpose of constructing a bridge or bridges in connection with the building of public roads within the county, the funds available to the county, as provided in the quotation above set out, would be legally available for the retirement of warrants or bonds or other evidences of indebtedness issued for the purpose of building such bridge.

We have examined the plat enclosed with your request and have concluded that the jetties constructed, as indicated on such plat, were not only feasible and practicable, but essential to the protection of the road and bridge. It is obvious that without this protection the erosion caused by the encroachment of the river will untimately undermine the road as well as the bridge. Accordingly, it is our opinion that the obligations issued evidencing expenditure of funds for the construction of the jetties come within the purview of House Bill 688, and, therefore, the funds made available to the county through the Lateral Road Account could be legally used in the retirement of said obligations.

Our conclusion is based upon the reasoning that the protection afforded by the jetties is almost as necessary a part of the construction of the bridge as is the span or steel framework of such bridge. We think the erection of the jetties is effectually carrying out the constitutional and statutory mandate requiring counties to lay out, establish and operate public roads, and to build bridges and maintain

same. It is manifest that the bridge could not long be maintained for public use without the protection afforded by the jetties.

Trusting that this satisfactorily answers your question, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Clarence E. Crowe
Assistant

CEC-s

APPROVED FEB. 15, 1940

(s) Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion Committee
By B. W. B.
Chairman